## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THOMAS STRETCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-19-1167-SM |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Thomas Stretch (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's final decision that he was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 1382c(a)(3)(A). The parties have consented to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Docs. 9, 13.

Plaintiff maintains the ALJ erred by improperly considering the report from an examining doctor. After a careful review of the record (AR), the parties' briefs, and the relevant authority, the court reverses and remands the Commissioner's decision. *See* 42 U.S.C. § 405(g).[1]

---

[1] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the Administrative Record will refer to its original pagination.

## I.   Administrative determination.

### A.   Disability standard.

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 1382c(a)(3)(A).   "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B.   Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985).   If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy.   *Id.*

### C.   Relevant findings.

### 1.   Administrative Law Judge's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe.  AR 12-22; *see* 20 C.F.R. § 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process).  The ALJ found Plaintiff:

(1)   had not engaged in substantial gainful activity since January 30, 2017, the application date;

(2)   had the severe impairments of degenerative disc disease of the lumbar spine with radiculopathy, status post 2006 laminectomy, and anxiety with depression;

(3)   had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4)   had the residual functional capacity (RFC)[2] for light work with additional restrictions;

(5)   was unable to perform any past relevant work, but could perform jobs that exist in significant numbers in the national economy such as housekeeping cleaner, solder dipper, and mail clerk (non-postal); and thus

(6)   was not disabled.

AR 14-22.

---

[2]   Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations."  20 C.F.R. § 416.945(a)(1).

### 2.     Appeals Council's findings.

The SSA's Appeals Council denied Plaintiff's request for review, so the ALJ's unfavorable decision is the Commissioner's final decision in this case. *Id.* at 1-6; *see Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II.     Judicial review of the Commissioner's final decision.

The court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016).  Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (internal quotation marks and citation omitted)).  A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citation omitted).  The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (citation omitted).

### III.   Analysis.

#### A.   Issue for judicial review.

Plaintiff asserts the ALJ improperly considered the report and failed to weigh the opinions of an examining doctor, Dr. Richard Kahoe, Ph.D.  Doc. 14, at 3-9.

#### B.   Relevant Law.

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(1).  The applicable regulations governing the consideration of medical opinions distinguish between "treating" physicians, "examining" physicians, and "nonexamining" (or "consulting") physicians.  *See id.* § 416.927(c).  For an ALJ to evaluate and assign weight to a medical opinion, the issuing physician must provide "judgment" about the nature and severity of a claimant's limitations or "information" about the activities he or she could still perform despite these limitations.  *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008).

An ALJ must "give consideration to all the medical opinions in the record . . . [and] discuss the weight he assigns to such opinions."  *Keyes-Zachary v.*

*Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citations omitted).  The opinions of examining consultants generally receive less weight than a treating physician's opinion.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  Even so, an ALJ must properly consider their opinions and provide legitimate reasons for discounting them.  *See* 20 C.F.R. § 416.927(c).

The ALJ should consider: "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion." *Krauser*, 638 F.3d at 1331. That said, so long as the ALJ provides a well-reasoned discussion, the failure to "explicitly discuss" all the factors "does not prevent [the] court from according [the ALJ's] decision meaningful review." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

### C.   Dr. Kahoe's opinion and the ALJ's analysis.

Dr. Kahoe evaluated Plaintiff at a mental status examination on May 8, 2017.   AR 404.   In his report, Dr. Kahoe addressed Plaintiff's physical

appearance and behavior during the examination as well as Plaintiff's description of his symptoms. *Id.* at 404-05, 407-08. Dr. Kahoe found Plaintiff's thought processes were logical and coherent and that his computation skills were in the normal range. *Id.* at 405. He also addressed Plaintiff's results on the Montreal Cognitive Assessment and found Plaintiff's attention and concentration skills were severely impaired based on his evaluation. *Id.* Further, Dr. Kahoe stated that Plaintiff's intellectual ability was in the borderline range, his abstracting ability was marginal, and he had deficits in short-term and long-term memory. *Id.* He also addressed Plaintiff's health and habits, legal issues, and current living situation. *Id.* at 407. Dr. Kahoe diagnosed Plaintiff with severe and recurrent major depressive disorder with psychotic features, panic disorder with agoraphobia, borderline personality features, borderline intellectual functioning (provisional), and a GAF score of 42. *Id.* at 408.

In his summary of the report, the ALJ noted Dr. Kahoe's diagnoses and summarized various aspects of the mental status interview—including Plaintiff's physical characteristics, Plaintiff's mood and appearance, and Plaintiff's statement that he had attempted suicide twenty-six or twenty-seven times. *Id.* at 18. The ALJ also referenced Dr. Kahoe's belief that Plaintiff's prognosis was fair. *Id.* The ALJ weighed the opinion as follows:

> The Administrative Law Judge considered and gave partial weight
> to the opinions of consultative psychological examiner Richard
> Kahoe, Ph.D. . . . as Dr. Kahoe did not really provide functional
> limitations.  The medical evidence of record did, [sic] not support
> the history given by [Plaintiff].  The basis for psychosis diagnoses
> was not made clear in the report and a psychosis diagnosis is not
> consistent with the medical evidence of record.

*Id.* at 20.

### D.   The ALJ did not address probative evidence.

Plaintiff alleges the ALJ did not consider Dr. Kahoe's finding that
Plaintiff's attention and concentration skills were severely impaired or that
Plaintiff had deficits in short- and long-term memory.  Doc. 14, at 5.  The
Commissioner notes that "Plaintiff relies on ostensibly less favorable portions
of Dr. Kahoe's examination which he characterizes as limitations in attention
and concentration, including Montreal Cognitive Assessment findings he
references without authoritative interpretation."  Doc. 15, at 7.  But, the
Commissioner contends it was the ALJ's duty to resolve conflicts in the
evidence and "the ALJ noted contrary evidence from Dr. Kahoe [regarding]
Plaintiff's mental functioning . . . that outweighed" the evidence Plaintiff
asserts the ALJ did not address.  *Id.* at 8.

The Commissioner's explanation—that the ALJ only addressed
"contrary evidence" from Dr. Kahoe's report which "outweighed" portions more
favorable to Plaintiff—amounts to error.  "It is improper for the ALJ to pick

and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). While "an ALJ is not required to discuss every piece of evidence," he must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996); *see also* 20 C.F.R. § 416.920(a)(3) ("We will consider all evidence in your case record. . . .").

Here, Dr. Kahoe found Plaintiff had severely limited attention and concentration skills and deficits in both short- and long-term memory. AR 405. Dr. Kahoe also summarized the results of assessments supporting his findings. *Id.* Such evidence is probative as it relates to the limiting effects of Plaintiff's mental impairments. As such, the ALJ should have addressed the evidence in the decision and erred by failing to do so.[3]

---

[3]     The Commissioner generally argues that the ALJ's RFC assessment—which limits Plaintiff to performing simple tasks and instructions—is supported by the evidence. Doc. 15, at 4-7; AR 16. Similarly, Plaintiff contends additional limitations are supported by evidence from Dr. Kahoe's report. Doc. 14, at 6. The Court will not accept the parties' requests to reweigh the evidence. *See Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (noting that where an ALJ "did not provide" the Commissioner's proffered explanations, the court "may not create or adopt" such "post-hoc rationalizations to support the ALJ's decision").

### E.   The ALJ did not weigh parts of Dr. Kahoe's opinion.

An ALJ is required to weigh every medical opinion it receives.  *See* 20 C.F.R. § 416.927(c).  An opinion from an examining physician, such as Dr. Kahoe, "may be dismissed or discounted," so long as the ALJ bases the decision "on an evaluation of all of the factors set out in [§ 416.927(c)] and [he] . . . provide[s] specific, legitimate reasons for rejecting it." *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (internal quotation marks omitted).  The ALJ gave partial weight to Dr. Kahoe's report.  AR 20.  Plaintiff contends "that the ALJ only adopted *certain portions*, but not all, of [Dr.] Kahoe's opinion." Doc. 14, at 4.  As a result, Plaintiff alleges the ALJ erred by failing to explain which portions of the opinion were adopted and which were rejected. *Id.*

Because the ALJ did not address Dr. Kahoe's findings that Plaintiff had severe limitations in attention and concentration or deficits in memory,[4] it follows that the ALJ did not specifically reject those opinions.  The ALJ's analysis does not indicate otherwise.  The ALJ rejected Dr. Kahoe's diagnosis of psychosis because it was not consistent with the medical record.[5]  AR 20.  He

---

[4]   Dr. Kahoe's findings that Plaintiff was severely limited in attention and concentration and had memory deficits amount to medical opinions because they are statements reflecting the severity of Plaintiff's mental impairments. *See* 20 C.F.R. § 416.927(a)(1).

[5]   Plaintiff does not dispute this finding. *See* Doc. 14, at 8.

also noted that the medical evidence did not support the history given by Plaintiff,[6] but Dr. Kahoe's findings related to attention, concentration, and memory were linked to objective tests. *Id.* at 20, 405. The specific reasons for rejecting portions of Dr. Kahoe's opinions did not relate to his findings regarding Plaintiff's attention, concentration, or memory.

This matter is similar to a case cited by Plaintiff in which a district court found the ALJ's analysis was flawed because she gave "some weight" to a medical opinion but did not identify which portions of the opinion were given weight and which were not. *See* Doc. 14, at 4 (citing *Shivers v. Comm'r of Soc. Sec. Admin.*, 2019 WL 1348416, at *3 (E.D. Okla. Mar. 8, 2019) ("[The Commissioner's argument], however, also points out the flaw in the ALJ's analysis. She gave the opinion some weight which begs the question of which portions were given weight and which were not."), *adopted*, 2019 WL 1339591 (E.D. Okla. Mar. 25, 2019)). On remand, the ALJ should "specifically set forth

---

[6] Plaintiff contends the ALJ's statement that the medical evidence did not support the history given by Plaintiff was not clear. Doc. 14, at 7. Plaintiff contends if it means that the subjective complaints reported by Plaintiff in his interview with Dr. Kahoe were not supported by the medical evidence, the analysis is flawed because Dr. Kahoe found Plaintiff was reliable. *Id.* at 8. The undersigned does not reach the merits of this claim as it "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

the portions of the report which are given weight, the portions that are not supported, and the evidence which contradicts that opinion." *Id.*

## IV.  Conclusion.

Based on the above, the court reverses and remands the Commissioner's decision.

**ENTERED** this 6th day of July, 2020.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

12